UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRIAN HAGERTY,                        )
                                      )
            Plaintiff(s),             )        No. C09-3299 BZ
                                      )
      v.                              )        **ORDER DENYING DEFENDANT'S**
                                      )        **MOTION FOR SUMMARY JUDGMENT**
AMERICAN AIRLINES LONG TERM )
DISABILITY PLAN,                      )
                                      )
            Defendant(s).             )
_____)

      Plaintiff Brian Hagerty filed this action claiming that

defendant American Airlines Long Term Disability Plan ("The

Plan") violated his rights under ERISA by wrongfully denying

him long term disability benefits.  The Plan now moves for

summary judgment that it did not violate ERISA and that it is

entitled to judgment as a matter of law.  For the following

reasons, The Plan's motion is **DENIED**.[1]

      Plaintiff worked as a flight attendant for American

---

[1]      All parties have consented to my jurisdiction,
including entry of final judgment, pursuant to 28 U.S.C. §
636(c) for all proceedings.

1

1   Airlines, Inc. for over 30 years.[2]   Around 1984, plaintiff

2   contracted HIV which required him to take several medications.

3   He continued to work as a flight attendant, until November 15,

4   2004.   He then filed a claim for long term disability benefits

5   with The Plan, claiming that his HIV, Hepatitis C, and other

6   conditions prevented him from working.   Plaintiff has suffered

7   from a number of conditions, with several persisting to this

8   day including chronic hepatitis C, skin lesions, colonic

9   diverticulosis, gastroesophageal reflux disease, recurrent

10   dysphagia, a hiatal hernia, schatzki's ring, a thyroid

11   condition, and a heart murmur.

12        The Plan is administered by MetLife, whose compensation

13   is not tied to the payment or denial of claims.   The Plan is

14   funded entirely through employee contributions.   Under the

15   terms of The Plan, during the first 24 months of disability,

16   an employee is considered disabled if he or she is unemployed

17   and unable to perform the major and substantial duties of a

18   Flight Attendant because of sickness or injury.   After the

19   initial 24 month period, an employee is considered totally

20   disabled if he or she is unemployed and unable to perform the

21   major and substantial duties of any occupation for which the

22   employee has become reasonably qualified.

23        Plaintiff received disability payments from March 15,

24   2005 through April 14, 2008.   From January 17, 2007 until

25   April 14, 2008, MetLife determined that plaintiff was disabled

26

27        [2]   The parties did not submit a joint statement of
    undisputed facts.   However, the Court has only relied on facts
28   which the parties do not dispute, unless otherwise noted.

1   from working in any capacity.  AR 189.  On April 14, 2008,

2   MetLife terminated Plaintiff's disability benefits based on

3   its on-going review of plaintiff's condition.  MetLife found

4   that the medical information it reviewed did not substantiate

5   plaintiff's claim that he was unable to work in any occupation

6   for which he was qualified and that plaintiff would be able to

7   work as a sales attendant, appointment clerk, or cashier.

8   MetLife conducted another review of plaintiff's file which

9   upheld the prior decision.  In connection with this review,

10  MetLife had plaintiff's claim reviewed by Medical Consultants

11  Network.  Dr. Gerstenblitt of Medical Consultants Network

12  found that plaintiff did not sufficiently establish that he

13  was disabled, in part because he had provided no objective

14  medical evidence of his fatigue claims.  Plaintiff then

15  appealed this decision to the Pension Benefits Administration

16  Committee ("PBAC").  In his appeal, plaintiff provided a list

17  of his doctors, health care providers, and prior

18  correspondence with MetLife.  He did not enclose any

19  additional medical reports, diagnosis, or test results.  The

20  PBAC analyst requested an independent review, which was

21  performed by Network Medical Review.  Network had a

22  Gastroenterologist, a Cardiologist, and an Endocrinologist

23  review plaintiff's file and render an opinion whether

24  plaintiff was totally disabled from performing the major job

25  duties of any occupation for which he was qualified as of

26  April 11, 2008.  The reviewing doctors all concluded that from

27  their standpoints, plaintiff had not submitted sufficient

28  proof that he was disabled.  Plaintiff filed this lawsuit

1    following the final review of his file by Network.

2         The Plan first argues that this case should be subject to

3    an abuse of discretion standard, which plaintiff does not

4    contest.  The Plan next argues that there are no triable

5    issues of material fact regarding the disposition of

6    plaintiff's claims and that The Plan did not abuse its

7    discretion.

8         The Plan contends that it appropriately determined

9    plaintiff's eligibility for two reasons.  First, plaintiff

10   made several comments that he was retired and that he had no

11   interest in returning to work.  Second, The Plan contends that

12   the final review conducted by Network was accurately and

13   fairly carried out.  In response, plaintiff contends that the

14   plan abused its discretion by denying his first appeal,

15   conducting the final appeal without the necessary records,

16   failing to determine the limiting effects of plaintiff's HIV

17   status, and failing to consider plaintiff's SSDI benefits.

18             *Bias*

19        As an initial matter, plaintiff claims that Dr.

20   Gerstenblitt and Network were biased and did not render

21   independent opinions.  In support, he cites to a number of

22   rulings in other cases which found that evidence presented in

23   those cases supported a charge of bias.  No such evidence was

24   developed in this case.  The Court will only examine

25   National's and Dr. Gerstenblitt's behavior as documented

26   within the administrative record in determining whether they

27   acted appropriately in determining that plaintiff was not

28

4

1   disabled.[3]   Administrative Record ("AR") 134-38.   However,

2   given that MetLife owes the plan participants a "special

3   standard of care," its decision to continue to use Dr.

4   Gerstenblitt and Network in light of the opinions cited by

5   plaintiff is curious.

6                   **First Appeal/Failure to Document Fatigue**

7        Plaintiff complains Dr. Gerstenblitt committed error by

8   requiring objective proof or documentation of plaintiff's

9   complaints of fatigue.   Plaintiff cited several cases where

10  courts found it error to require objective medical evidence of

11  complaints that are inherently subjective in nature.   See e.g.

12  Montour v. Hartford Life & Acc. Ins. Co., 588 F.3d 623, 635

13  (9th Cir. 2009) ("unreasonable for Hartford to require Montour

14  to produce objective proof of his pain level"); Cook v.

15  Liberty Life Assur. Co. of Boston, 320 F.3d 11, 21 (1st Cir.

16  2003) (requiring objective documentation of Chronic Fatigue

17  Syndrome is unreasonable); Mitchell v. Eastman Kodak Co., 113

18  F.3d 433 (3rd Cir. 1997) (same).   Since defendant did not

19  respond to this argument and the cited cases, I find that

20  requiring objective medical evidence of fatigue, when The Plan

21  documents do not expressly require such proof, is a factor

22  suggesting The Plan abused its discretion.

23       Further, Dr. Gerstenblitt declined to analyze the

24  objective medical effects of the myriad medications plaintiff

25  took which caused drowsiness or fatigue.   For example, during

26  ────────────────────────

27      [3]   Defendant's objections to plaintiff's evidence of
    bias against Dr. Gerstenblitt and Network (Reply p. 7) are well
    taken.   However, plaintiff's bias allegations play no role in
28  the disposition of this motion.

1   the time surrounding Dr. Gerstenblitt's review, plaintiff

2   regularly took Lexiva, Ziagen, and Lisinopril, all of which

3   are known to cause fatigue.[4]   AR 108.   Dr. Gerstenblitt opined

4   that there was no medical documentation of fatigue, yet he

5   ignored the medications which commonly cause fatigue.

6                    **Failure to Obtain Records**

7        Plaintiff contends that Network's failure to obtain

8   medical records referenced, but not attached to plaintiff's

9   second level appeal constituted an abuse of discretion.   In

10  support, plaintiff cited Booton v. Lockheed Medical Ben. Plan,

11  110 F.3d 1461, 1465 (9th Cir. 1997) which states that "to deny

12  the claim without explanation and without obtaining relevant

13  information is an abuse of discretion."   Booton is based on

14  the numerous requirements in ERISA that a Plan provide a

15  claimant with detailed information of why a claim was denied,

16  including: "iii) A description of any additional material or

17  information necessary for the claimant to perfect the claim

18  and an explanation of why such material or information is

19  necessary . . . ."   29 C.F.R. § 2560.503-1.   Once again, The

20  Plan declined to respond to this authority which seems to be

21  fairly applicable to this case.   In Booton, as here,

22  "[l]acking necessary-and easily obtainable-information, [the

23  defendant] made its decision blindfolded."   See Kunin v.

24  Benefit Trust Life Ins. Co., 910 F.2d 534, 538 (9th Cir. 1990)

25  _____

26       [4]    The Court takes judicial notice of information posted
    on websites such as that of the Department of Veteran Affairs,
    http://www.va.gov/, and http://www.drugs.com, regarding the most
27  common side effects of medications.   Further, defendant does
    not dispute plaintiff's assertion that these medications
28  commonly cause fatigue.

1   (burden is on plan to obtain adequate information to make

2   decision).  Here, three physicians rendered an opinion without

3   consulting with plaintiff's treating physicians or reviewing

4   at least some of plaintiff's relevant medical files.

5   Plaintiff listed his medical care providers in his appeal to

6   the PBAC and had provided at least some authorization to

7   obtain records.  Nevertheless, Network did not contact

8   plaintiff's cardiologist, gastroenterologist, or his

9   endocrinologist despite reviewing plaintiff's file for

10  cardiac, gastroenterologic, and endocrine related disability.

11       Defendant's sole response to this argument is that the

12  appeals process required plaintiff to submit all appropriate

13  documentation and plaintiff's failure to do so should

14  countenance the review of an otherwise incomplete file.

15  However, under ERISA, if defendant believed that plaintiff had

16  not attached adequate information, it should have informed

17  plaintiff that his submission was inadequate.  Deciding this

18  case on an admittedly incomplete file without notifying

19  plaintiff of what additional records it needed is another fact

20  suggesting an abuse of discretion.

21       Moreover, plaintiff asserted at argument and defendant

22  did not dispute, that The Plan's practice was to require a

23  claimant to initiate a claim by completing a form and signing

24  a medical authorization so The Plan could get the records

25  necessary to review a claim.  Because of this practice

26  plaintiff believed he had done all that was necessary when he

27  updated his long list of doctors.

28

7

1                     **Failure to Determine HIV effects**

2         Plaintiff also argues that Network should have evaluated

3 whether plaintiff's HIV status affected his ability to perform

4 any occupation.  None of the Network doctors ever evaluated

5 whether plaintiff's HIV status affected his ability to work.

6 Defendant does not contest this statement or the import of it.

7                     **SSDI**

8         While it is true that there are differences between

9 disability determinations in Social Security and ERISA

10 settings, "complete disregard for a contrary conclusion

11 without so much as an explanation raises questions about

12 whether an adverse benefits determination was the product of a

13 principled and deliberative reasoning process."  Montour v.

14 Hartford Life & Acc. Ins. Co., 588 F.3d 623, 635 (9th Cir.

15 2009).  Here, The Plan never obtained plaintiff's Social

16 Security file, and never addressed the different results it

17 found by drawing an opposite conclusion, even though it

18 encouraged him to apply for Social Security.

19                 **Plaintiff's Remarks**

20         Defendant heavily relies on several statements that

21 plaintiff made which purportedly show that plaintiff willingly

22 chose not to work despite being physically capable.  In 2006,

23 plaintiff said "I could be considered well enough to take on

24 new training for another job."  AR 74.  In 2006, plaintiff

25 also stated "I can't return to airline or union work, and I am

26 too OLD to retrain."  AR 81.  Dr. Ollife, plaintiff's

27 attending physician, stated that "patient [plaintiff] has

28 chosen to retire due to intermittent fatigue & physical

1   limitations" and that plaintiff could work a few hours per

2   day.   AR 102.   Defendant contends that these statements prove

3   that plaintiff was not physically disabled and instead simply

4   chose not to return to work.

5          However, considering the full context of plaintiff's

6   comments, they do not prove that plaintiff was physically able

7   to return to work.   Plaintiff also stated that "I retired

8   early due to my interferon treatments" for HIV and that "I

9   can't & won't return to work."   AR 109.   Plaintiff further

10  stated that "I had hopes of returning to work after the

11  [interferon] treatment was over, but during the course of the

12  year it became apparent that I was getting older and was

13  becoming fatigued very easily, and that didn't stop after my

14  treatment ended in 2006 . . . . My decision [to retire] was

15  made at least in part, due to my physical disability to do

16  that job."   AR 132.   When read in context, plaintiff's

17  comments demonstrate his subjective belief that he was unable

18  to work at least in part due to disability.

19          **Conclusion**

20          There are a number of factors present here that prevent

21  me from finding that The Plan did not abuse its discretion in

22  determining plaintiff's eligibility for long term disability

23  benefits.   Therefore, **IT IS ORDERED** that defendant's motion

24  for summary judgment is **DENIED**.

25  Dated:   September 3, 2010

26                                          Bernard Zimmerman

27                                 United States Magistrate Judge

28  G:\BZALL\-BZCASES\HAGERTY V. AMERICAN AIRLINES\MSJ ORD.wpd